1   COLEMAN & BALOGH LLP
    ETHAN A. BALOGH, No. 172224
2   255 Kansas Street, Suite 340
    San Francisco, CA 94103
3   Telephone: 415.565.9600
    Facsimile: 415.565.9601
4
    COLEMAN & BALOGH LLP
5   BENJAMIN L. COLEMAN, No. 187609
    433 G Street, Suite 202
6   San Diego, CA 92101
    Telephone: 619.652.9960
7   Facsimile: 619.652.9964

8
    Attorneys for Defendant
9   TAMMY A. THOMAS

10

11                      UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14
    UNITED STATES OF AMERICA,          Case No.  06-0803 SI
15
          Plaintiff,
16                                      NOTICE OF MOTION AND MOTION
          v.                            FOR DISCOVERY; MEMORANDUM OF
17                                      POINTS AND AUTHORITIES IN SUPPORT
    TAMMY A. THOMAS                      THEREOF
18
          Defendant.
19                                      Date:   November 9, 2007
                                        Time:  11:00 a.m.
20                                      Courtroom 10

21                                      Before the Honorable Susan Illston
                                        United States District Judge
22

23   TO:    SCOTT SCHOOLS, UNITED STATES ATTORNEY, and MATTHEW A. PARRELLA,

24   ASSISTANT UNITED STATES ATTORNEY

25          PLEASE TAKE NOTICE that on November 9, 2007 at 11:00 a.m., or as soon thereafter

26   as counsel may be heard, defendant, Tammy A. Thomas, by and through her counsel, Ethan A.

27   Balogh, will ask the Court to enter an order compelling the production of discovery pursuant to

28   Federal Rules of Criminal Procedure 6, 12, and 16, the Due Process of the Fifth Amendment, the

     Compulsory Process Clauses of the Sixth Amendment, the Equal Protection Clause of the

Fourteenth Amendment and this Court's supervisory powers.

This motion is based upon the instant Motion and Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ethan A. Balogh filed herewith, and any and all other materials that may come to the Court's attention at the time of the hearing on this motion.

Respectfully submitted,


Dated: October 12, 2007
/s/ E A Balogh
COLEMAN & BALOGH LLP
By: ETHAN A. BALOGH
255 Kansas Street, Suite 340
San Francisco, CA 94103

Attorneys for Defendant
TAMMY A. THOMAS

2

1  COLEMAN & BALOGH LLP
   ETHAN A. BALOGH, No. 172224
2  255 Kansas Street, Suite 340
   San Francisco, CA 94103
3  Telephone: 415.565.9600
   Facsimile: 415.565.9601
4
   COLEMAN & BALOGH LLP
5  BENJAMIN L. COLEMAN, No. 187609
   433 G Street, Suite 202
6  San Diego, CA 92101
   Telephone: 619.652.9960
7  Facsimile: 619.652.9964

8
   Attorneys for Defendant
9  TAMMY A. THOMAS

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14
   UNITED STATES OF AMERICA,              Case No.  06-0803 SI
15
            Plaintiff,
16                                        MEMORANDUM OF POINTS AND
            v.                            AUTHORITIES IN SUPPORT OF MOTION
17                                        FOR DISCOVERY
   TAMMY A. THOMAS
18
            Defendant.
19                                        Date:   November 9, 2007
                                          Time:  11:00 a.m.
20                                        Courtroom 10

21                                        Before the Honorable Susan Illston
                                          United States District Judge
22

23

24

25

26

27

28

Defendant Tammy Thomas respectfully submits the following Statement of Facts and Memorandum of Points and Authorities in support of her motion to compel the production of discovery.  Because the materiality of many of these requests relate to the facts and arguments raised in Ms. Thomas' concurrently filed memorandum of points and authorities filed in support of her motion to dismiss the indictment, Ms. Thomas incorporates by reference that pleading, rather than repeating those arguments here.

## I. Background

On December 14, 2006, a federal grand jury in the Northern District of California returned an indictment charging Ms. Thomas with three counts of making material false statements before the grand jury, in violation of 18 U.S.C. § 1623, and with one count of obstructing justice during the same grand jury appearance, pursuant to 18 U.S.C. § 1503.  The government has provided Ms. Thomas with a copy of her grand jury testimony, her prior testimony before an arbitration before the United States Anti-Doping Agency ("USADA"), her own medical records, and USADA's documents relating to previous out-of-competition sports testing relating to Ms. Thomas' previous life as an elite amateur cyclist.  The government also permitted the undersigned counsel two and one-half hours to review nearly 300 pages of grand jury testimony from two other persons whom the government apparently will call to testify at trial.

The government has provided Ms. Thomas with scant else.  Following an in-person meeting with the government, the government responded to Ms. Thomas' detailed discovery requests with the back of its hand, asserting mostly that the requests were "[r]efused as beyond the scope of Rule 16."[1]  This response is difficult to fathom, considering that Rule 16 expressly provides for materials "material to the defense" and Ms. Thomas sought to discuss the materiality with the government, who simply refused even to listen.  This stone-wall approach to required disclosures is troublesome for many reasons, including the need for this Court to address

---

[1]Declaration of Ethan A. Balogh Filed in Support of Motions Filed October 12, 2007 (hereafter "Balogh Decl.") Exs. H & I.

1

discovery questions that should be easily handled by the parties.

## II.  Argument

Ms. Thomas makes the following discovery motion pursuant to Rules 6(e)(3)(E)(ii), 12(b)(4) and 16, as well as the Due Process Clauses of the Fifth Amendment and the Compulsory of the Sixth Amendment, and this Court's supervisory powers.  These requests are not limited to those items that the prosecutor has actual knowledge of, but rather include all discovery listed below that is "in the possession, custody, or control of any federal agency participating in the same investigation of the defendant."[2]

**A.    The government should be compelled to produce to Ms. Thomas the names, addresses, and telephone numbers of all grand jury members who were present for Ms. Thomas' 2003 grand jury testimony**.

The grand jurors who heard Ms. Thomas' grand jury testimony are percipient witnesses to the alleged crime in this matter.  A cursory review of Ninth Circuit and out-of-circuit authority involving trials alleging violations of the perjury or material false declaration statutes reveals that at least one grand juror—typically the foreman—is selected by the government to testify at trial, usually to the alleged materiality of the defendant's grand jury testimony.[3]

Just as the government has the right to interview and determine which of these potential percipient witnesses it would like to produce at trial, Ms. Thomas has an equal right to interview these percipient witnesses.  Ms. Thomas' rights in this regard stem from (1) her Sixth Amendment right to the compulsory process of witnesses in her favor at trial and (2) fundamental

_____

[2]*United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).

[3]*See e.g.*, *United States v. Sisack*, 527 F.2d 917 (9th Cir. 1975) (grand jury foreman testified before petit jury about the scope of the grand jury's inquiry); *United States v. Ponticelli*, 622 F.2d 985 (9th Cir. 1980) (grand jury foreman testified before petit jury as to materiality of alleged perjurious statement), overruled on other grounds, *United States v. De Bright*, 730 F.2d 1255 (9th Cir. 1984); *United States v. Williams*, 993 F.2d 451, 454-55 (5th Cir. 1993) (grand jury foreman testified before petit jury as to materiality of defendant's statements), abrogated on other grounds, *Texas v. Cobb*, 532 U.S. 162 (2001); *United States v. Dennis*, 786 F.2d 1029, 1041-42 (11th Cir. 1986) (grand jury foreman testified before petit jury as to materiality of defendant's statements); *United States v. Brimberry*, 779 F.2d 1339 (8th Cir. 1985) (same); *United States v. Delke,* 768 F.2d 1257, 1261 (11th Cir. 1885) (same); *United States v. Ely*, 910 F.2d 455, 457 (7th Cir. 1990) (grand jury foreman testified before petit jury in perjury trial).

1  fairness as embodied in the Due Process Clause. In addition to these constitutional prerogatives,

2  Ms. Thomas' request is amply supported by statute: because Ms. Thomas' motion to dismiss

3  concerns grand jury misconduct regarding the intentional compulsion of immaterial testimony,

4  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits disclosure as well.[4]

5        Just last year, the Supreme Court again remarked on the importance of an accused's right

6  to present her defense at trial. As the Court stated, "'[w]hether rooted directly in the Due Process

7  Clause of the [Fifth] Amendment or in the Compulsory Process or Confrontation Clauses of the

8  Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to

9  present a complete defense."'"[5] Indeed, the Supreme Court has recognized that "[f]ew rights are

10 more fundamental than that of an accused to present witnesses in his own defense."[6] This right is

11 abridged by the imposition of rules that "'infring[e] upon a weighty interest of the accused' and

12 are "arbitrary" or "disproportionate to the purposes they are designed to serve."'"[7]

13       While Rule 6 expressly permits disclosure of the information sought here, Ms. Thomas's

14 constitutional rights independently require disclosure of this information. In simplest terms, the

15 government cannot control and vet which witnesses to Ms. Thomas' grand jury testimony will be

16 permitted to testify before the petit jury. Because the Constitution provides Ms. Thomas with the

17 right to assess which witnesses may be in her favor, and to call them on her behalf, the

18 government cannot abrogate that right by keeping secret the names and addresses of persons who

19 stand as percipient witnesses to the alleged crime. There simply is no principled reason to secret

20

21       [4]Fed. R. Crim. P. 6(e)(3)(E)(ii) (permitting disclosure of Rule 6 materials when the
22 defendant "shows that a ground *may* exist to dismiss the indictment because of a matter that
   occurred before the grand jury.").

23       [5]*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476
24 U.S. 683, 690 (1986), in turn quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984).

25       [6] *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973) citing *Webb v. Texas*, 409 U.S. 95
26 (1972); *Washington v. Texas*, 388 U.S. 14, 19 (1967); *In re Oliver*, 333 U.S. 257 (1948).

27       [7]*Holmes*, 547 U.S. at 324 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998), in
28 turn quoting *Rock v. Arkansas*, 483 U.S. 44, 58, 56 (1987)).

this information from Ms. Thomas in this case. Indeed, the Ninth Circuit has held that pretrial disclosure of the identity of government witnesses may be required upon a showing of reasonable necessity.[8] Ms. Thomas readily makes that showing here.

Unless this request for the disclosure of percipient witnesses is granted, the government in this case can eviscerate Ms. Thomas' right to compulsory process by hiding from her the identity of these percipient witnesses. The government will then control the proof at trial by selecting only those witnesses it believes will support its case. But as many as 11 of these grand jurors may have evidence that the alleged false declarations set forth in this indictment were immaterial to the grand jury's investigation. So too, all of the venire persons may have relevant testimony about the "perjury trap" Ms. Thomas has raised as a defense. While Ms. Thomas will maintain her Sixth Amendment right to confront and cross-examine the one or two witnesses the government settles upon, her independent right to compulsory process, and to identify and call witnesses in her favor, will be quashed *ab initio.*

Fundamental fairness denies the government the right to rest its thumb on the scale in this way. To the contrary, Ms. Thomas' right to a fair trial itself requires that she be provided the opportunity to interview these witnesses (if they will agree to be interviewed), and to call at trial those witnesses she believes will further her defense. The Court should order disclosure.[9]

Further, given the typical secrecy afforded to grand jurors and each of the jurors likely belief that they are legally barred from discussing this matter with Ms. Thomas' representatives absent a Court Order, Ms. Thomas further requests the issuance of a Court Order informing these witnesses that they *are lawfully permitted* to discuss grand jury matters with Ms. Thomas if they so choose, but that they are neither obligated to nor prohibited from doing so.

---

[8]*United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980) citing *United States v. Richter*, 488 F.2d 170 (9th Cir. 1973).

[9]Ms. Thomas recognizes the appropriateness of a protective order with regard to such disclosure, and remains willing to negotiate one with the government or abide one issued by this Court. *See* Fed. R. Crim. P. 6(e)(3)(E) (providing the District Court broad discretion regarding the setting of conditions for the release of grand jury material).

**B.   The government should be compelled to produce to Ms. Thomas impeachment evidence relating to Don H. Catlin.**

Don H. Catlin's relevance to this case may be summarized as follows: Dr. Caitlin was the founder of the UCLA Olympic Analytical Laboratory, and was the individual in charge of handling testing for illegal performance-enhancing drugs for the United States Anti-Doping Agency ("USADA") and the United States Olympic Committee ("USOC"), as well as other sports entities.  In 2002, Dr. Catlin testified against Ms. Thomas at an arbitration held by USADA to determine whether or not Ms. Thomas should be banned from international cycling for life as a result of out-of-competition drug testing.  Prior to that time, Dr. Caitlin had discovered "norbolethone" in two of Ms. Thomas' test samples, determined that norbolethone was a "designer steroid" and published a paper on his findings.  Ms. Thomas had sued Dr. Caitlin for this conduct, alleging that his conduct amounted to using her as an involuntary test subject, in violation of the standards of medical ethics, as well as California law.  As a result of Ms. Thomas' lawsuit, USADA altered its rules so as to ban the use of athlete's samples absent their prior written consent.[10]

Dr. Catlin has also acted as a government agent in this case.  As set forth in the accompanying motion to suppress, in the fall of 2003—in the build up to the indictment of this matter—Dr. Caitlin took Ms. Thomas' urine samples in violation of USADA's rules and Ms. Thomas' constitutional rights, and retested them to present evidence in this case.  (The government has alerted Ms. Thomas that Dr. Caitlin will serve as its expert witness in this matter.[11])  Additionally, Ms. Thomas understands and believes that Dr. Catlin accompanied the prosecution's agents in the initial raid of Balco laboratories.[12]

These facts demonstrate Dr. Caitlin's bias, or at least his potential for bias, in this matter.  Whether or not Dr. Caitlin played a role in the indictment of Ms. Thomas in this matter remains

---

[10]Balogh Decl. Ex. K at 11.

[11]Balogh Decl. Ex. H.

[12]Balogh Decl. Ex. J.

1  to be seen, and Ms. Thomas is entitled to discovery on this issue.  Accordingly, Ms. Thomas

2  requests that the government be compelled to produce to her all documents—whether paper or

3  electronic copies—that reflect whether Dr. Catlin (I) is biased or prejudiced against Ms. Thomas;

4  (ii) has a motive to falsify or distort his or her testimony; (iii) is unable to perceive, remember,

5  communicate, or tell the truth;  (iv) has used narcotics or other controlled substances, or has been

6  an alcoholic; (v) has entered into any agreement with the government;  (vi) made or received any

7  promises, whether express or implied, from the government; and (vii) maintains any other

8  relationship with the government, whether adverse or amicable, in this or related cases.

9       Ms. Thomas further requests that if the government is in possession of statements about

10  Ms. Thomas from Dr. Caitlin that have not been reduced to writing, *e.g.*, if Dr. Caitlin made any

11  disparaging statements about Ms. Thomas to government counsel (Messrs. Parrella, Nedrow and

12  Finigan) or to its lead agent (Special Agent Jeffrey Novitzky) or his colleagues, the government

13  should be ordered to reduce those statements to writing and to produce them.  Similarly, should

14  such evidence have been reduced to writing already, including in rough notes, the government

15  should be ordered to produce those materials forthwith.[13]

16       Whether this evidence is termed exculpatory evidence favorable to Ms. Thomas and

17  discoverable under *Brady v. Maryland*[14] and its progeny or impeachment evidence which must be

18  produced pursuant to *United States v. Bagley*[15] and *United States v. Agurs*[16] is of no moment.

19  Such material is discoverable, and discoverable now, and there is no basis to withhold it from

20  Ms. Thomas.

21       Additionally, Ms. Thomas cannot assess whether such material is being withheld because

22  the government has refused to answer that question directly.  When Ms. Thomas sought such

23  _____

24  [13]*See Harris v. United States*, 543 F.2d 1247, 1253 (9th Cir. 1976).

25  [14]373 U.S. 83 (1963).

26  [15]473 U.S. 667 (1985).

27  [16]427 U.S. 97 (1976).

28

6

material from the government, it responded that it "acknowledge[d] its duty to disclose any exculpatory evidence to the defendant and will do so if any is discovered."[17]  But that response is meaningless, as it tells nothing about how the government interprets "exculpatory" evidence in this matter.  Is the government saying that it possesses no impeachment evidence regarding Dr. Catlin or that it believes that the evidence in its possession need not be disclosed?  We cannot know because the government, for some reason, will not say so.

The fact that the government failed to provide to Ms. Thomas documents showing USADA's alteration of its rules as a result of her lawsuit against Dr. Catlin bespeaks a wanting in the government's approach to its duty to produce exculpatory evidence.  Ms. Thomas is entitled both to exculpatory and impeachment information, and asks the Court to Order the government to produce such materials immediately.

**C.  The government should be compelled to produce to Ms. Thomas impeachment evidence relating to Patrick Arnold and Kelcey Dalton.**

The government has disclosed Patrick Arnold and Kelcey Dalton as two witnesses the government will rely upon in its case in chief.   Like Dr. Catlin, Ms. Thomas requests that the government be compelled to produce to her all documents—whether paper or electronic copies—that reflect whether Arnold or Dalton (i) is biased or prejudiced against Ms. Thomas; (ii) has a motive to falsify or distort his or her testimony; (iii) is unable to perceive, remember, communicate, or tell the truth;  (iv) has used narcotics or other controlled substances, or has been an alcoholic; (v) has entered into any agreement with the government;  (vi) made or received any promises, whether express or implied, from the government; and (vii) maintains any other relationship with the government, whether adverse or amicable, in this or related cases.  Ms. Thomas further requests that if the government is in possession of statements about Ms. Thomas from Arnold and/or Dalton that have not been reduced to writing, *e.g.*, if either made any disparaging statements about Ms. Thomas to government counsel (Messrs. Parrella, Nedrow and Finigan) or to its lead agent (Novitzky) or his colleagues, the government should be ordered to

---

[17]Balogh Decl. Ex. H.

1  reduce those statements to writing and to produce them forthwith.

2       As with the previous request, whether this evidence is termed exculpatory evidence

3  favorable to Ms. Thomas and discoverable under *Brady* or impeachment evidence discoverable

4  under *Bagley* and *Agurs* does not affect Ms. Thomas' right to such material.  And because the

5  government's approach to this answer is the same as with Dr. Caitlin—an unreassuring "we

6  know our duty"—Ms. Thomas cannot assess whether such material is being withheld at present.

7  **D.  Ms. Thomas requests as documents "material to preparing" her defense pursuant to**
8  **Fed. R. Crim. P. 16(a)(1)(E), and pursuant to the Fifth Amendment and this Court's**
   **supervisory powers, the documents set forth below.**

9       **1.      Copies of all grand jury subpoenae (and documents received thereunder),**
10              **issued in relation to the indictment of Ms. Thomas, including specifically all**
              **grand jury subpoenae which resulted in materials mentioning Ms. Thomas.**

11      As set forth more fully in Ms. Thomas' concurrently filed motion to dismiss,  the

12  question of materiality presents an element of the false, material declaration charges in this

13  matter.  Similarly, the motion raises questions as to the propriety of the government's actions in

14  compelling Ms. Thomas' testimony.

15      The due process and grand jury abuse questions now at issue in this case may be

16  answered, in part, by a review of the government's use of grand jury subpoenae relating to the

17  indictment of Ms. Thomas.  The identity of the parties' subpoenaed, as well as the timing of their

18  testimony, are likely to provide a greater understanding of the government's use or lack of use of

19  a perjury trap in this case.  Accordingly, these documents, which are in the custody of the

20  government, are "material to preparing the defense" and should be disclosed.

21      In addition to the Rule 16 basis for this disclosure, Ms. Thomas also relies upon Federal

22  Rules of Criminal Procedure 6(e)(3)(E)(I), which permits disclosure of "a grand jury matter

23  preliminarily to or in connect with a judicial proceeding," and 6(e)(3)(E)(ii), which permits

24  disclosure when the defendant "shows that a ground *may* exist to dismiss the indictment because

25  of a matter that occurred before the grand jury."[18]  The grand jury's receipt of materials relating

26

27  _____

28      [18](emphasis added).

8

1   to Ms. Thomas may support her motion to dismiss pursuant to the perjury trap doctrine.

2   Disclosure should be ordered for this additional reason.

3       **2.**    **Copies of all documents relating to the indictment and conviction of Patrick Arnold, including but not limited to all materials produced to Arnold and/or his counsel in that criminal proceeding.**

4

5          The government's allegations in this matter concern, in part, whether Ms. Thomas'

6   testimony about receiving materials from Patrick Arnold was true.  The government has

7   permitted Ms. Thomas to review Arnold's grand jury testimony, and has indicated its intent to

8   rely on Arnold's testimony at trial, but has refused to provide any other material relating to

9   Arnold's prior criminal case.  The government has not provided any basis to withhold these

10  materials.  There is none.

11         In short, the government asserts that Ms. Thomas' statements some how affected their

12  investigation of Arnold.  Subsequent to Ms. Thomas' testimony, Arnold was indicted and

13  pleaded guilty to conspiracy to distribute steroids to Victor Conte for Conte's subsequent

14  distribution to athletes.  The timing of the government's case against Arnold—including the

15  material it possessed *prior to* Ms. Thomas' grand jury testimony—as well the materials it

16  possessed with regard to his culpability will address the materiality of the statements Ms.

17  Thomas made to the grand jury.  While the government's successful prosecution of Arnold may

18  not be dispositive in this case—Ms. Thomas does not assert that Arnold's eventual conviction, as

19  a matter of law, establishes the immateriality of her statements to the grand jury—it is relevant to

20  that question, in that it will tend to show whether or not Ms. Thomas' statements were material to

21  the grand jury's investigation of Arnold.  More importantly, it may shed significant light on the

22  government's basis to seek Ms. Thomas' testimony in November 2003, other than in furtherance

23  of its snare of Ms. Thomas.  Both of these legal theories show the materiality of these documents

24  to the defense—documents which have already been provided to Arnold more than a year

25  ago—which is sufficient to require disclosure pursuant to Rule 16.

26         In addition to the Rule 16 basis for this disclosure, Ms. Thomas also relies upon Federal

27  Rules of Criminal Procedure 6(e)(3)(E)(I) and 6(e)(3)(E)(ii).  In simplest terms, the documents

28

relating to the investigation and prosecution of Arnold *may* support Ms. Thomas' pending motion to dismiss pursuant to the perjury trap doctrine. That showing is sufficient to require disclosure here.

3.     **Copies of all evidence concerning Ms. Thomas and her relationship with Arnold and Balco recovered pursuant to search warrant on September 3, 2003 or thereafter.**

The government alleges that during its execution of its search at Balco on September 3, 2003, it obtained material relevant to Ms. Thomas.[19] Three weeks later, the government issued its subpoena to Ms. Thomas which compelled her to testify before the Balco grand jury during the first week of November 2003. The substance of the materials relating to Ms. Thomas in the September 3, 2003 search bear directly on the questions of the materiality of Ms. Thomas' grand jury testimony, as well as the government's motivations in pursuing that testimony. These documents are in the possession of the government, and there is no statutory or other basis to withhold them from Ms. Thomas. The government should be compelled to produce these documents pursuant to Rules 6 and 16.

4.     **All documents relating to the government's receipt of documents bates-stamped TT 258-325—Ms. Thomas' personal medical records obtained from her personal physician—including all notes and correspondence relating the to government's request for and receipt of these materials.**

The government obtained from Ms. Thomas' personal physician Ms. Thomas' private, confidential medical records. The manner by which the government obtained these confidential records, as well as its animus in pursuing them, are material to Ms. Thomas' assessment of the government's grand jury abuse in this matter. These documents are in the possession of the government, and there is no statutory or other basis to withhold them from Ms. Thomas.

In addition to the Rule 16 basis for this disclosure, Ms. Thomas also relies upon Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), which permits disclosure when the defendant "shows that a ground *may* exist to dismiss the indictment because of a matter that occurred before the

---

[19]Indictment ¶ 6.

10

grand jury."[20]   The grand jury's receipt of confidential medical records relating to Ms. Thomas may support her motion to dismiss pursuant to the perjury trap doctrine.   Disclosure should be ordered for this additional reason.

**5.      Documents showing (a) the date on which the Balco grand jury was impaneled, including copies of any court orders related thereto; and (b) the date(s) on which the United States District Court extended the term of the Balco grand jury, including copies of any court orders related thereto.**

In *In re Special Grand Jury (For Anchorage, Alaska)*,[21] the Ninth Circuit held that certain ministerial records of the grand jury that are regularly maintained in the District Court's files are public documents to which "access should not be denied" "[a]bsent specific and substantial reasons for such refusal."   Ms. Thomas requested from the government such ministerial records in the form of court documents relating to the impanelment and the extension of terms of the Balco grand jury.   Rather than providing "specific and substantial reasons for" refusing Ms. Thomas' request, the government asserted that these materials fall outside of the scope of Rule 16.

The government is wrong for two reasons.   First, Rule 16 provides for discovery of documents material to the defense, and such ministerial documents so qualify.   In short, as set forth more fully in Ms. Thomas' motion to dismiss, the run-away national investigation undertaken by this grand jury violated Ms. Thomas' due process rights and constituted grand jury abuse.   Ministerial court documents which reflect the impanelment of this grand jury, and its repeated extensions long after the Balco investigation concluded, will provide further documentary evidence in support of Ms. Thomas' motion.   Rule 16 plainly provides for such discovery.

And even if it did not, the government is wrong because it has ignored the Ninth Circuit's pronouncement that these materials are presumably open to the public.   As made clear by the Supreme Court in *Nixon v. Warner Communications, Inc.* nearly 30 years ago, the public's right

---

[20]Fed. R. Crim. P. 6(e)(3)(E)(ii).

[21]674 F.2d 779 (9th Cir. 1982).

to judicial monitoring, *i.e.*, the public's right of access to court documents so that it may "keep a watchful eye on the workings of public agencies" is fundamental.[22]  With respect to the ministerial documents of the grand jury—none of which implicate the rule of grand jury secrecy—the Ninth Circuit "perceive[d] no reason . . . why the public should not have access to" such records, and ordered disclosure absent "specific and substantial reasons" to support continued sealing.[23]  There are no such reasons in this case, and disclosure should be compelled.

### 6.    The identity of all persons called to testify before the Balco grand jury and copies of the transcripts of their grand jury testimony.

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes this Court to require the government to disclose to Ms. Thomas copies of all of the transcripts relating to testimony taken before the Balco grand jury.  To obtain such an order, this rule requires Ms. Thomas to "show[ ] that a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury."[24]  For the reasons set forth more fully in Ms. Thomas' motion to dismiss the indictment, Ms. Thomas submits she has met that minimal threshold here.

In brief, Ms. Thomas has presented evidence to support dismissal under the perjury trap doctrine.  In support of that motion, Ms. Thomas demonstrated that this grand jury could not have indicted Arnold for any crime whatever based on Ms. Thomas' testimony, whether as she gave it or if the government could change every "no" answer to a "yes" as it claims Ms. Thomas should have testified.  Ms. Thomas further showed that the government did not genuinely seek testimony from Ms. Thomas to further any investigation of Arnold, but instead, pursued her like prey, seeking to snare her and to bring this very prosecution.  In addition to the cold record of the grand jury proceedings involving Ms. Thomas, she presented evidence that the government misused this grand jury to embark on a nationwide investigation with the aim of reforming sport, going so far as using subterfuge to ensnare another defendant into this jurisdiction, rather that

---

[22]435 U.S. 589, 597-98 (1978).

[23]*In re Special Grand Jury*, 674 F.2d at 781.

[24]Fed. R. Crim. P. 6(e)(3)(E)(ii).

forwarding information to the appropriate authorities in the Eastern District of New York.  Ms.
Thomas has also raised additional questions relating to the grand jury's misconduct in this
matter, such as its studied refusal to contemplate, much less honor, the breadth of the immunity
order foisted upon Ms. Thomas by indicting her for obstruction of justice, a statute for which she
enjoys absolute immunity from prosecution.

Under this set of circumstances, Ms. Thomas has good cause to believe that her review of
the transcripts in this case may well bring to light additional instances of grand jury misconduct,
which would provide even further support for her motion to dismiss.  Ms. Thomas cannot assess
such misconduct absent access to these materials.  Indeed, when assessing access of grand jury
transcripts to the defense under this rule, the Ninth Circuit suggested that

> in other cases involving alleged grand jury errors it may be advisable for the district court
> to order disclosure and allow defense attorneys to brief the issue of prejudice.  What
> appears to be harmless to a district judge may be prejudicial if seen in light of a defense
> counsel's special familiarity with a a given prosecution.  As an alternative to actual
> disclosure, a district court may choose to allow defense counsel to participate in an *in
> camera* hearing so that any question of prejudice will be subject to adversarial
> presentation.[25]

Ms. Thomas submits that only a studied review of these transcripts, similar to the review that
uncovered the import of a stray sentence in the plea agreement of Kirk Radomski, will allow for
a fully accurate presentation to the Court on the grand jury misconduct issues presented here.
Ms. Thomas thus asks for complete disclosure subject to an appropriate protective order.[26]

### 7.   Information regarding material locations in the case of United States v. Radomski.

In the Eastern District of New York is a partially sealed warrant relating to the indictment
and conviction of Kirk Radomski (the Novitzky Affidavit).[27]  The relevance of the Radomski

---

[25] *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994).

[26] Each of the general policy reasons against unsealing grand jury transcripts, for which
Rule 6(e)(3)(E)(ii) stands as an exception, may still be adequately protected by an restrictive
use/disclosure order by this Court.  *See Fowlie*, 24 F.3d at 1065 n.5 (setting forth policy bases for
grand jury secrecy).

[27] A copy of the partially-redacted affidavit is attached to the Balogh Declaration as

13

information is set forth at page 9 of Ms. Thomas' motion to dismiss, and is incorporated by reference here.

Briefly, Ms. Thomas argues in her motion to dismiss that the government's improper use of the Northern District's grand jury to investigate and prosecute conduct wholly lacking any nexus to this locality is supported by evidence in the case captioned *United States v. Radomski*, currently pending in this Court. In that case, it appears that the same prosecutors handing this matter secured criminal jurisdiction over that defendant through subterfuge. Such conduct is questionable, to say the least, for the reasons set forth by the Second and Fourth Circuits in *United States v. Archer*[28] and *United States v. Coates*,[29] respectively. And despite Radomski's waiver of any objection to which United States Attorney's Office prosecuted him, Ms. Thomas believes his case provides (and can provide additional) evidence of the over-expansive use of this locality's grand jury to police nationally steroid use by professional and amateur athletes.

To this end, Ms. Thomas demands disclosure of certain information relating to that investigation. Ms. Thomas asks does not ask the government to unseal further the Novitzky affidavit. By this request, however, and Ms. Thomas asks that the government disclose to her (1) the location of the federal grand jury identified in paragraph 10; and (2) the city and state locations which are redacted in paragraphs 14, 15, 16, 17, 18, 19, 23, 30, 32, 33, 35, 36, 37, 39, and 43 of the Novitzky Affidavit. This information, currently in the custody of the government, is material to the grand jury misconduct issues pending before this Court, and should be disclosed. The Court need not take any action regarding the unsealing of the Novitzky Affidavit to require disclosure here.

////

---

Exhibit G.

[28]486 F.2d 670, 681 (2d Cir.1973) (dismissing indictment where a federal agent made telephone call from New Jersey to New York in order to generate federal jurisdiction).

[29]949 F.2d 104, 106 (4th Cir.1991) (dismissing indictment where the interstate element was contrived by the government for the sole purpose of creating federal jurisdiction).

14

**E.     The Court should enter a broad preservation Order and require the government to account for destroyed evidence.**

Ms. Thomas further requests the government be ordered to preserve all physical and/or documentary evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to this case.  Ms. Thomas made this demand in a letter hand-delivered to the government on July 16, 2007.  Two weeks later, the government declined to agree this preservation request.  Instead, the government took the position that it intends to preserve the evidence it intends to produce at trial only.  Nonetheless, the government then invited Ms. Thomas to identify any other preservation request, which the government would "consider."  Ms. Thomas then made the *preservation* request set forth below, which the government rejected as "tantamount to open file discovery."  Of course, a preservation request is different than requiring discovery of those materials.

Accordingly, Ms. Thomas asks this Court to issue in Order requiring the government to preserve the following documents with regard to Don Catlin, Kelcey Dalton, and Patrick Arnold: the government should be ordered to preserve all documents, records, notes, letters, email, and any other writing containing communications from or about these persons, as well as any representative, associate, colleague, or counselor for each of these persons. (For brevity, we refer to this as a request for "Communications Documents" hereafter). This request for the preservation of Communications Documents includes all papers and electronic files which contain or reflect (1) any Communications Documents between any government personnel and the individuals set forth above (i.e., Catlin, Dalton, Arnold or their representatives, associates, colleague or counselors), and (2) any notes by government personnel relating to communications from or about the listed persons. This request for Communications includes all documents in the possession of the United States Attorney's Office for the Northern District of California, as well as those materials in the possession, custody, or control of any federal agency that participated in the investigation of the above-captioned case, including specifically IRS-CID Agent Jeff Novitzky and his colleagues in this matter.

Ms. Thomas further specifically requests that the government be Ordered to ascertain

whether subsequent to September 2003, any Communications Documents have been destroyed or deleted or in any way put out of the possession, custody or control of any government personnel set forth in this request.  If such materials have been destroyed, deleted or in any way put out of the government's possession since that time, we ask the Court to compel the government to create a log setting forth, to the greatest extent possible, the nature of the destroyed materials, both as to the type of the unpreserved papers or files and their content.  Thereafter, the parties can assess what action, if any, should be taken with regard to any such unpreserved materials.

**F.      The Court should require disclosure of reports of scientific tests or examinations prepared by expert witnesses.**

Ms. Thomas requests the reports of all tests and examinations which are material to the preparation of the defense or are intended for use by the government at trial.  *See* Fed. R. Crim. P. 16(a)(1)(F).  Ms. Thomas also requests written summaries describing the bases and reasons for the government's proffered expert witnesses.  *See* Fed. R. Crim. P. 16(a)(1)(G).

The government has informed Ms. Thomas that it intends to rely on Dr. Catlin and on Ms. Thomas' personal doctor as expert witnesses as trial.[30]  To this end, the government has informed Ms. Thomas that it will provide a supplemental notice and a summary of this testimony at some undisclosed point.  The government has not informed whether this information is already in existence.

Rule 16(a)(1)(F) requires production of such materials "[u]pon a defendant's request . . . if the item is within the government's possession, custody or control."  If the government is in possession of any additional, but as of yet undisclosed reports, from Drs. Catlin or Weirman, it must produce them now.  The government should be compelled to comply with the rule.

**G.      The government should disclose informants and cooperating witnesses**.

Ms. Thomas requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness

---

[30]`Balogh Decl. Ex. H.

unknown or unknowable to the defense.[31]  Ms.  Thomas also requests disclosure of any

information indicating bias on the part of any informant or cooperating witness.[32]  Such

information would include what, if any, inducements, favors, payments or threats were made to

the witness to secure cooperation with the authorities.

### III.  Conclusion

For the reasons set forth above, Ms. Thomas respectfully requests the Court to enter an

Order compelling the government to produce completely all materials responsive to these

discovery requests.

Respectfully submitted,


Dated: October 12, 2007

/s/ E A Balogh
COLEMAN & BALOGH LLP
By: ETHAN A. BALOGH
255 Kansas Street, Suite 340
San Francisco, CA 94103

Attorneys for Defendant
TAMMY THOMAS

---

[31]*Roviaro v. United States*, 353 U.S. 52, 61-62 (1957).

[32]*Giglio v. United States*, 405 U.S. 150 (1972).

17

# TABLE OF CONTENTS

I. Background.......................................................................................................................1

II. Argument .......................................................................................................................2

A.     The government should be compelled to produce to Ms. Thomas the names, addresses, and telephone numbers of all grand jury members who were present for Ms. Thomas' 2003 grand jury testimony...............................................................................2

B.     The government should be compelled to produce to Ms. Thomas impeachment evidence relating to Don H. Catlin.........................................................................5

C.     The government should be compelled to produce to Ms. Thomas impeachment evidence relating to Patrick Arnold and Kelcey Dalton.................................................7

D.     Ms. Thomas requests as documents "material to preparing" her defense pursuant to Fed. R. Crim. P. 16(a)(1)(E), and pursuant to the Fifth Amendment and this Court's supervisory powers, the documents set forth below..........................................................8

   1.     Copies of all grand jury subpoenae (and documents received thereunder) issued in relation to the indictment of Ms. Thomas, including specifically all grand jury subpoenae which resulted in materials mentioning Ms. Thomas............................8

   2.     Copies of all documents relating to the indictment and conviction of Patrick Arnold, including but not limited to all materials produced to Arnold and/or his counsel in that criminal proceeding..........................................................9

   3.     Copies of all evidence concerning Ms. Thomas and her relationship with Arnold and Balco recovered pursuant to search warrant on September 3, 2003 or thereafter..............................................................................10

   4.     All documents relating to the government's receipt of documents bates-stamped TT 258-325—Ms. Thomas' personal medical records obtained from her personal physician—including all notes and correspondence relating the to government's request for and receipt of these materials..............................................10

   5.     Documents showing (a) the date on which the Balco grand jury was impaneled, including copies of any court orders related thereto; and (b) the date(s) on which the United States District Court extended the term of the Balco grand jury, including copies of any court orders related thereto............................................11

   6.     The identity of all persons called to testify before the Balco grand jury and copies of the transcripts of their grand jury testimony....................................................12

   7.     Information regarding material locations in the case of United States v. Radomski.................................................................................14

E.     The Court should enter a broad preservation Order and require the government to account for destroyed evidence............................................................................15

F.     The Court should require disclosure of reports of scientific tests or examinations prepared by expert witnesses..........................................................................16

i

G.      The government should disclose informants and cooperating witnesses..........................16

III. Conclusion.............................................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**Cases**

3   *Brady v. Maryland*, 373 U.S. 83 (1963)........................................................................6, 8

4   *California v. Trombetta*, 467 U.S. 479 (1984)..................................................................3

5   *Chambers v. Mississippi,* 410 U.S. 284 (1973)................................................................ 3

6   *Crane v. Kentucky*, 476 U.S. 683 (1986)..........................................................................3

7   *Giglio v. United States*, 405 U.S. 150 (1972)..................................................................17

8   *Harris v. United States*, 543 F.2d 1247 (9th Cir. 1976)...................................................6

9   *Holmes v. South Carolina*, 547 U.S. 319 (2006) ............................................................3

10  *In re Oliver*, 333 U.S. 257 (1948).....................................................................................3

11  *In re Special Grand Jury (For Anchorage, Alaska)*, 674 F.2d 779 (9th Cir. 1982)...............11, 12

12  *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597-98 (1978)..........................12

13  *Rock v. Arkansas*, 483 U.S. 44 (1987)..............................................................................3

14  *Texas v. Cobb*, 532 U.S. 162 (2001) ................................................................................2

15  *United States v. Agurs*, 427 U.S. 97 (1976).................................................................6, 8

16  *United States v. Archer,* 486 F.2d 670 (2d Cir.1973) ....................................................14

17  *United States v. Bagley,*  473 U.S. 667 (1985)............................................................6, 8

18  *United States v. Brimberry*, 779 F.2d 1339 (8th Cir. 1985) ...........................................2

19  *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989)...................................................2

20  *United States v. Coates*, 949 F.2d 104 (4th Cir.1991)...................................................14

21  *United States v. De Bright*, 730 F.2d 1255 (9th Cir. 1984).............................................2

22  *United States v. Delke,* 768 F.2d 1257 (11th Cir. 1985) .................................................2

23  *United States v. Dennis*, 786 F.2d 1029 (11th Cir. 1986) ...............................................2

24  *United States v. Ely*, 910 F.2d 455 (7th Cir. 1990).........................................................2

25  *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994).........................................13

26  *United States v. Ponticelli*, 622 F.2d 985 (9th Cir. 1980) ..............................................2

27  *United States v. Scheffer*, 523 U.S. 303 (1998)...............................................................3

28

iii

*United States v. Spencer*, 618 F.2d 605 (9th Cir. 1980)....................................................................6

*United States v. Sisack*, 527 F.2d 917 (9th Cir. 1975) ..............................................................2

*United States v. Williams*, 993 F.2d 451 (5th Cir. 1993) ........................................................ 2

*Washington v. Texas*, 388 U.S. 14 (1967)..................................................................................3

*Webb v. Texas*, 409 U.S. 95 (1972).........................................................................................3

**Amendments, Statutes and Rules**

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) ........................................................ *passim*

Federal Rule of Criminal Procedure 16(a)(1)(E).............................................................*passim*

Federal Rule of Criminal Procedure 16(a)(1)(F).....................................................................16

Federal Rule of Criminal Procedure 16(a)(1)(G)....................................................................16

United States Constitution, Amendment V ......................................................................*passim*

United States Constitution, Amendment VI .....................................................................*passim*

1

<u>PROOF OF SERVICE</u>

2

     I, Ethan A. Balogh, declare that, on October 12, 2007, I sent by U.S. Mail a copy of the

3

attached NOTICE OF MOTION AND MOTION FOR DISCOVERY; MEMORANDUM OF

4

POINTS AND AUTHORITIES IN SUPPORT THEREOF to Matthew A. Parrella, Esq, 150

5

Almaden Boulevard, Suite 900, San Jose, CA 95133.  I declare under penalty of perjury that the

6

foregoing is true and correct.

7

8

Dated: October 12, 2007

/s/ E A Balogh

ETHAN A. BALOGH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28