SCOTT N. SCHOOLS (SC 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
JEFFREY R. FINIGAN (CASBN 168285)
Assistant United States Attorneys

   450 Golden Gate Avenue
   San Francisco, California 94102
   Telephone: (415) 436-7232
   Facsimile: (415) 436-7234
   Email: matthew.parrella@usdoj.gov
         jeffrey.nedrow@usdoj.gov
         jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. CR 06-0803 SI |
|      Plaintiff, ) | |
| ) | **UNITED STATES' OPPOSITION TO MOTION FOR DISCOVERY** |
|   v. ) | |
| ) | Date: November 9, 2007 |
| TAMMY THOMAS, ) | Time: 11:00 a.m. |
| ) | Judge: Hon. Susan Illston |
|      Defendant. ) | |

## I. Introduction

Except in the portions specifically consented to, the United States opposes the

defendant's Motion For Discovery (the "Motion").

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

## II.  Background Facts

The above-named defendant was indicted by a grand jury in the Northern District of California on December 14, 2006, for three counts of perjury, in violation of 18 USC § 1623(a), and one count of obstruction of justice, in violation of 18 USC § 1503.  Immediately prior to the defendant's first district court appearance on January 19, 2007, and before any discovery request by the defendant, the government delivered 329 pages of discovery to the defense.  This discovery included:

- Grand jury transcript of the defendant, dated November 6, 2003. (Bates stamp TT 1-47)
- United States Anti-Doping Agency (USADA) documents, including UCLA Olympic Testing Lab paperwork from Dr. Don H. Catlin.. (TT 48-73, 81-104)
- Fax recovered from Balco pursuant to search warrant. (TT 74-80)
- Reporter's Transcript of Arbitration Proceeding of United States Anti-Doping Agency v. Tammy Thomas, dated August 20, 2002, including the testimonies of Tammy Thomas and Dr. Don Catlin. (TT 105-257)
- Photo of Tammy Thomas. (TT 257)
- Documents from the University of Colorado hospital obtained by grand jury subpoena, including paperwork of Dr. Margaret E. Wierman.  (TT 258-325)
- email dated May 1, 2002, obtained pursuant to search warrant from Victor Conte's computer. (TT 326)
- Check # 1068 from Tammy A. Thomas to Patrick Arnold. (TT - 327)
- Western Union money order # 06-303558875, purchased by Tammy Thomas, payable to Patrick Arnold. (TT-328)
- email obtained pursuant to search warrant from Patrick Arnold's computer, dated October 6, 2003. (TT-329)

On March 12, 2007, in an effort to accelerate the resolution the case, the government allowed then-counsel Tony Tamburello to review the grand jury transcripts of witnesses Patrick

Arnold (pp. 1-56, 74-90 (lines 1-18), and 109-123) and Kelcey Dalton (pp.1-157 (all)).  These transcripts were not discoverable at that time under Rule 16, as they were not exculpatory, and the government took the extraordinary step of allowing defense counsel to review them soon after initial appearance in order to facilitate an expeditious resolution.

On May 25, 2007, the defendant substituted attorneys, which new attorney then confirmed that he had received the discovery from prior counsel.

On July 16, 2007, the government allowed new counsel to review the same grand jury transcripts, for the same reasons, that were reviewed on March 12, 2007.

Also on July 16, 2007, the defendant hand-delivered a letter requesting certain discovery.

On July 30, 2007, the government responded item-by-item to defendant's letter.  Included in the response was a demand for reciprocal discovery comprised of the following:

> Please take notice that pursuant to Fed. R. Crim. P. 16 (b)(1)(A)&(B), the government requests that the defendant make the following disclosure:
>
> 1. That the defendant permit the government to inspect or copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if the item is within the defendant's custody and control and the defendant intends to use the item in her case-in-chief at trial.
>
> 2. That the defendant permit the government to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if the item is within the defendant's custody and control and the defendant intends to use the item in her case-in-chief at trial or intends to call the witness who prepared the report and the report relates to the witness's testimony.

To date, the government has received no response whatsoever – positive, negative, or neutral – from the defendant to this request for disclosure in the verbatim language of Fed. R. Crim. P. 16 (b)(1)(A)&(B).

On July 31, 2007, the government delivered additional discovery materials via fax.  These materials included:

- Unsealing application and order (TT 330-331)
- Immunity and Compulsion Order (TT 332-333)
- Grand jury subpoena served on the defendant (TT 334)

1 • Travel arrangement documents (including Fact Witness Voucher, various receipts, 1-page letter from defendant, and copy of check from the U.S. Marshal to Tammy Thomas in the amount of $453.43) (TT 335-339)

Pursuant to Criminal Local Rules 16-1(c), the government makes the following supplemental disclosure:

    (1) Electronic Surveillance - no evidence was obtained as a result of electronic surveillance.

    (2) Informers - the government has no intent to use an informant as a witness.

    (3) Evidence of Other Crimes, Wrongs or Acts - previously disclosed.

    (4) Co-conspirators Statements - none.

### III. Argument.

#### A. Defendant's Requests.

The defendant moves the court for an order compelling the government to disclose various grand jury matters and other information in violation of Fed. R. Crim. P. 16. The government has already voluntarily disclosed information to the defendant above and beyond the requirements of Rule 16. The government additionally has committed to continue discovery, disclose Brady material if any is discovered, and turn over Jencks material ahead of the schedule mandated in 18 USC § 3500 and Fed. R. Crim. P. 26.2(a). As such, the government has engaged in the discovery process in good faith. Contrast that with the defendant, whose various demands (responded to below) are, in general, mere fishing expeditions that evince a desire to replace the Rule 16 discovery proceedings with civil-style interrogatories, and whose blatant failure to respond to the government's request for reciprocal discovery bespeaks a disrespect for the process.

Federal Rules of Criminal Procedure Rule 6(e) codifies the traditional rule of grand jury secrecy by prohibiting members of the grand jury, government attorneys and their authorized assistants, and other grand jury personnel from disclosing matters occurring before the grand jury, except as otherwise authorized by the rule. Grand jury secrecy is vital to the investigative

function of the grand jury, and serves several distinct interests, primarily to encourage witnesses to come forward and testify freely and honestly, to minimize the risks that prospective defendants will flee or use corrupt means to thwart investigations, to safeguard the grand jurors themselves as well as the proceedings from extraneous pressures and influences, and to protect accused persons who are ultimately exonerated from unfavorable publicity. *Douglas Oil v. Petrol Stops Northwest,* 441 U.S. 211, 219 (1979); *United States v. Fischbach and Moore, Inc.,* 776 F.2d 839, 843 (9th Cir. 1985).

A court may permit disclosure of grand jury materials under Rule 6(e)(3)(C)(i) only when the requesting party has demonstrated a "particularized need" for the material. Under the particularized need standard, the movant must demonstrate that the material sought is:

> [N]eeded to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed. . . .[I]n considering the effects of disclosure of grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.

*Douglas Oil Co.* at 222.

A defendant's alleged attempt to show constructive amendment or unconstitutional broadening of the indictment is not assisted by grand jury information, and such a request fails to show a particularized need for the grand jury testimony. *United States v. Writers & Research, Inc.*, 113 F.3d 8, 12 (2d Cir. 1997).

Disclosure will not be allowed upon a mere showing of relevance, nor for general discovery. *United States v. Procter & Gamble*, 356 U.S. 677 (1958); *Petrol Stops Northwest v. United States*, 571 F.2d 1127, 1129 (9th Cir. 1978), *rev'd on other grounds sub nom.* The burden of demonstrating that the need for disclosure outweighs the need for secrecy rests with the person seeking disclosure. *Id.* at 222.

### B.    Government Responses.

The government responds to the defendant's demands as follows:

A. Names, addresses, and telephone numbers of grand jurors.

1    The defendant's request for the names, addresses, and telephone numbers of grand jurors would exert pressure on all sitting grand jurors and cause them to wonder if their identities would be disclosed. This in turn would influence not only the inner workings of the grand jury, which is designed to operate in secret, but in fact would cause grand jurors themselves to seek recusal. The promise made to grand jurors at the time they were seated by the court was that their investigations, and their identities, would be kept secret. Exposing the identities of grand jurors would result in the intimidation of grand jurors, ultimately reducing the effectiveness of the grand jury investigative purpose. Further, the disclosure of the identities of grand jury witnesses would have a catastrophic effect on any grand jury's ability to encourage civilians to come forward and testify.

A case that the defendant cites, *In re Special Grand Jury*, 674 F.2d 778 (9th Cir.1982), settles the issue. In that case, the Ninth Circuit stated that one of the prominent reasons for grand jury secrecy was "to insure the utmost freedom of the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors." *Id.* at 781. The court then goes on to say that this reason would be implicated by disclosure of records identifying the grand jurors, reasoning in dicta that:

> It would be reasonable to hold that this element of the request [roll sheets, attendance records, etc.] runs afoul of the doctrine of grand jury secrecy, in spite of the fact that it seems not to fall within the scope of Rule 6(e) language.

*Id.* at 78 [explicative language added].[1]

The defendant has put forward no legitimate particularized need in the present case. The government has disclosed the defendant's grand jury testimony that is the basis for the present indictment, and the defendant has not contested the accuracy of the transcript. Even if transcript accuracy were an issue, the transcript contains the name of the grand jury reporter so the defendant would have adequate facts to pursue that argument.

The defendant's claim that the grand jurors are percipient witnesses, based upon her

---

[1] *In re Special Grand Jury* was decided solely on a standing issue, the court declining to decide the grand jury secrecy issue on the record before it. *Id.* at 784.

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

6

assertions that her false statements were not material to the Balco investigation and that there was a so-called perjury trap, is specious. Giving both defense assertions far more of the benefit of the doubt than they deserve, that is, assuming for the moment that they have some legal basis, it is apparent that neither argument has anything to do with the grand jurors to whom the defendant lied. The materiality argument is an issue for the trial jury, and the applicability of the perjury trap doctrine is a legal matter for the court. Either way, the legitimacy, or lack thereof, of the defendant's claims does not stand or fall on the observations of a grand juror, therefore the defendant has not met her burden of proving that the need for disclosure outweighs the need for secrecy, and her request for the names, addresses, and telephone numbers of grand jurors should be denied.

B. Impeachment evidence relating to Dr. Don. H. Catlin

C. Impeachment evidence relating to Patrick Arnold and Kelcey Dalton.

      The defendant makes similar, interrogatory-type demands for discovery under these two sections. The government has already provided more than Rule 16 requires relating to these requests, turning over the entire administrative hearing testimony of Dr. Catlin (as well as another witness), and allowing the defense to review the highly-inculpatory grand jury transcripts of Arnold and Dalton on two separate occasions. Similarly, the government has committed to the disclosure of Jencks material prior to the schedule mandated in 18 USC § 3500 and Fed. R. Crim. P. 26.2(a), that is, one week before the pretrial conference on this matter. The government has also acknowledged its Henthorn and Brady obligations and pledges to abide by same. The fact is that the applications under these sections are both beyond the scope of Rule 16 (the various interrogatory questions), and untimely (the material falling under the Jencks Act) and should be denied.

D. Documents "material to the preparation" of the defense.

  1. All grand jury subpoenas and related documents in relation to the indictment of this defendant.

      The government has previously disclosed the grand jury subpoena under which this defendant was summoned to the grand jury for her testimony on November 6, 2003. The

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

7

existence of other grand jury subpoenas and related documents is both not discoverable at this time under Rule 16 and irrelevant. The disclosure of other grand jury subpoenas would directly impinge upon grand jury secrecy and thus frustrate the evidence gathering function of that body. The defendant cites no authority requiring such disclosure, and makes no logical factual argument regarding how any requested information would be material to the defense, merely making the conclusory statement that the information is material. The defendant's only argument refers to need for a "greater understanding" of a doctrine (perjury trap) that is inapplicable in the present case and that has never been applied by the Ninth circuit. Motion at 8.

    2. Copies of all documents relating to the indictment and conviction of Patrick Arnold.

    3. Evidence relating to the defendant's relationship with Patrick Arnold and Balco.

The government has disclosed emails recovered from Victor Conte's computer (TT 326), and Patrick Arnold's computer (TT 329) as well as a hard-copy fax recovered at Balco (TT 74-80), all which establish the defendant's relationships. The search warrant affidavits utilized to recover these items are not discoverable under Rule 16 as this defendant has no standing to contest the searches. The affidavits fall into the category of Jencks material of the affiants, will be turned over to the defense one week before the pretrial conference if the government intends to call those affiants as witnesses.

    4. Documents relating to the Government's receipt of Defendant's Medical Records.

The government obtained medical records from the University of Colorado Hospital by way of grand jury subpoena.

    5. Documents relating to the impanelment and extension of the Balco grand jury.

This request overlaps and covers much the same ground as the defendant's request for the names, addresses, and telephone numbers of grand jurors contained in section A of this motion. As such, the government incorporates its response to section A here.

Additionally, the defendant incompletely quotes from the decision in *In re Special Grand Jury,* 674 F.2d 778. Motion at 11, lines 7-10. The complete quote clearly conditions any right of access to ministerial records in the files of the district court upon the requirements of grand jury

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

8

secrecy. *Id.* at 781. Here, the demands of grand jury secrecy require that the requested documents be maintained by the district court in secret.

6. The identities of all Balco grand jury witnesses and copies of the transcripts of their grand jury testimony.

This request overlaps and covers much the same ground as the defendant's requests for the names, addresses, and telephone numbers of grand jurors contained in section A of this motion, and for documents relating to the impanelment and extension of the Balco grand jury contained in section D5 of this motion. As such, the government incorporates its responses to sections A and D5 here.

The defendant cites to *United States v. Fowlie,* 24 F. 3d 1059 (9th Cir. 1994), but fails to explain that in *Fowlie*, the District Court refused (and the Ninth Circuit approved such refusal) to disclose grand jury witness transcripts to the defense despite a clear (and conceded by the government) violation of Fed.R.Crim.P. 6(d)(1), that is, having an unauthorized person present while the grand jury was in session. *Id.* at 1066. Certainly the *Fowlie* logic would also support a refusal to disclose grand jury witness transcripts to the defense where, as here, there is no legitimate basis whatsoever for dismissal of the indictment.

7. Information regarding material locations in United States v. Radomski..

Not content to engage in a fishing expedition in her own case, the defendant hauls her boat out of her lake, trailers it down the road, and commences fishing in a completely different body of water. This request is a meaningless sham that only serves to waste the court's time and should be denied summarily.

E. Request for a preservation order.

The government has committed to preserve evidence that it will use at trial and has recognized its duty under *Brady* to disclose exculpatory evidence. The government has requested the defense to identify any particularized preservation request that the government would then consider. The defendant has refused to particularize her request and continues basically to request the government to commit to a "blanket" preservation. The government submits that this request is a mere attempt to create error by giving the defendant the opportunity to cry violation

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

of court order should a meaningless or irrelevant document be lost or destroyed. The court should avoid this trap and deny the defendant's request for a "blanket" preservation order.

F. Reports prepared by expert witnesses.

The government has previously disclosed all reports of tests and examinations br Dr. Catlin and Dr. Weirman in its possession. As previously pledged, the government will provide adequate notice for any further expert witness it intends to call at trial.

G. Informants and co-operating witnesses.

The government has no intent to use an informant as a witness.

**IV.  Speedy Trial Act Implications.**

The defendant made her initial appearances on the indictment on January 19, 2007, and all time has been excluded since then through November 9, 2007, via stipulation and order of the Court. Thus, 70 days remain on the trial clock pursuant to 18 U.S.C. § 3161(c)(1).

**V.  Conclusion**

The government respectfully requests that the court decide the matter in accord with all the above and deny the defendant's motion for discovery in its entirety except for portions to which the government has specifically consented..

DATED: October 26, 2007					Respectfully submitted,

						SCOTT N. SCHOOLS
						United States Attorney


						_____/s/_____
						MATTHEW A. PARRELLA
						JEFFREY D. NEDROW
						JEFFREY R. FINIGAN
						Assistant United States Attorneys

U.S. Opposition to Motion for Discovery
CR 06-0803 SI

10