1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,                          No. C 06-00803 SI

9              Plaintiff,                              **ORDER RE: VARIOUS PRE-TRIAL
                                                       MOTIONS**
10    v.

11   TAMMY A. THOMAS,

12             Defendant.
                                               /
13

14         On November 9, 2007, the Court heard oral argument on defendant Tammy Thomas' motion to

15   suppress evidence, motion to dismiss the indictment, motion for discovery, and motion to preclude

16   Assistant U.S. Attorney Jeffrey Nedrow from serving as trial counsel. Having considered the arguments

17   of counsel and the papers submitted, the Court rules as follows.

18

19                                         **BACKGROUND**

20         Defendant was a professional cyclist until she was suspended for life from competition in 2002,

21   after testing positive for steroids. Defendant had submitted urine samples to the United States Anti-

22   Doping Agency ("USADA"), which saved her urine samples following her suspension. In 2003,

23   Thomas was living in Mississippi when the prosecution served her with a subpoena compelling her to

24   testify before a grand jury in the Northern District of California. The grand jury was investigating the

25   distribution of anabolic steroids and other performance-enhancing drugs by the Bay Area Laboratory

26   Co-operative ("BALCO"), as well as BALCO's laundering of money gained from sales of those drugs.

27   Defendant's name had appeared on documents obtained during the execution of a search warrant at

28   BALCO, suggesting that defendant had connections to BALCO and also to Patrick Arnold, who

1  manufactured and distributed steroids to athletes and to BALCO. In October 2003, defendant testified

2  before the grand jury after receiving an immunity order that immunized her testimony from use in all

3  criminal prosecutions other than prosecution for perjury, false declarations, or failure to comply with

4  the order. Defendant testified to the grand jury that she had not received certain performance-enhancing

5  drugs from Arnold, had not taken any drugs that Arnold had given her, and had never taken anabolic

6  steroids. Three years later, after the prosecution had defendant's 2001 and 2002 urine samples retested

7  and found performance-enhancing drugs, the grand jury issued a four-count indictment against

8  defendant based on her 2003 grand jury testimony. The indictment charged defendant with three counts

9  of perjury relating to her statements about steroids and one count of obstruction of justice based on these

10  alleged false statements. Now before the Court are defendant's motion to suppress the results of the

11  prosecution's urine tests; motion to dismiss the indictment; motion for discovery; and motion to

12  preclude one of the Assistant United States Attorneys from serving as trial counsel. The Court will

13  address each motion in turn.

14

15  **DISCUSSION**

16  **1.    Defendant's motion to suppress**

17  Defendant moves to suppress evidence of the results of urine tests performed on defendant's

18  urine by the prosecution in late 2006. The tests were performed by Dr. Don Catlin at the request of the

19  prosecution and were found to contain norbolethone and tetrahydrogestrinone ("THG"). Defendant

20  argues that the test results must be suppressed because they were performed, without a warrant, on urine

21  that had been submitted by defendant in 2001 and 2002 to the USADA. The prosecution responds that

22  defendant lacks Fourth Amendment standing to challenge this search of her urine and that defendant had

23  no reasonable expectation of privacy in the urine samples for a number of reasons.

24  "[A] person who is aggrieved by an illegal search and seizure only through the introduction of

25  damaging evidence secured by a search of a third person's premises or property has not had any of his

26  Fourth Amendment rights infringed." *United States v. Pulliam*, 405 F.3d 782, 785-86 (9th Cir. 2005)

27  (internal quotation marks omitted). In order to bring a successful suppression motion, a defendant "must

28  have standing to challenge the illegal conduct that led to the discovery of the evidence." *Id.* at 786.

2

1   This principle of "Fourth Amendment standing" is a shorthand way of stating that a defendant's own

2   reasonable expectation of privacy must be infringed. *See id.* If the defendant has standing, the

3   defendant must then show that she "can claim a justifiable, a reasonable, or a legitimate expectation of

4   privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979)

5   (internal quotation marks omitted). This inquiry consists of two discrete questions: 1) whether the

6   individual can assert a subjective expectation of privacy and 2) whether this expectation is objectively

7   reasonable under the circumstances, i.e. "one that society is prepared to recognize as reasonable." *Id.*

8   (internal quotation marks omitted).

9   As a threshold matter, defendant lacks so-called Fourth Amendment standing to contest the

10  search of the urine samples. When defendant voluntarily submitted these samples to the USADA, the

11  USADA's protocols for drug testing, effective during the years 2001 and 2002, clearly stated that "[a]ll

12  samples collected by USADA shall be the property of USADA." *See* Finigan Decl. ex. B, ¶ 10 & ex.

13  C, ¶ 10. Defendant argues that the urine samples provided in 2001 and 2002 were not actually the

14  property of the USADA in 2006, when the testing occurred, because by then the protocol for drug

15  testing, effective in August 2004, stated that "[a]ll samples collected by USADA shall be the property

16  of USADA, but shall only be used for purposes outlined in this Protocol." *See* Balogh Decl. ex. K, ¶

17  11. The Court does not agree with defendant that the August 2004 protocol governs urine samples

18  submitted by defendant in 2001 and 2002. Under the protocols governing at that time, defendant's urine

19  samples became the property of the USADA once she handed them over. Subsequent amendments to

20  the protocol did not change the ownership of the samples, such as by providing that the previously-

21  submitted samples would revert to being the property of the athlete; indeed, subsequent amendments

22  continued to state that all samples were the property of USADA. *See* Balogh Decl. ex. K, ¶ 11. Because

23  the USADA, not defendant, owned the urine samples, defendant has no standing to contest the

24  prosecution's search of the samples. *See Pulliam*, 405 F.3d at 785-86.

25  Alternatively, the Court finds that defendant had no objectively reasonable expectation of

26  privacy in the urine samples that were tested by the prosecution. It is true, as a general rule, that athletes

27  "possess strong privacy interests in both their drug test results and the actual specimens." *United States*

28  *v. Comprehensive Drug Testing*, 473 F.3d 915, 936 (9th Cir. 2006); *see also United States v. Kincade*,

379 F.3d 813, 835-37 (9th Cir. 2004). For purposes of the Fourth Amendment, however, the Court must examine the particular circumstances involved in the prosecution's search to determine whether a defendant had an objectively reasonable expectation of privacy. *See Smith*, 442 U.S. at 740. Here, at the time defendant submitted the samples to USADA, she knew or should have known that the samples would become the property of USADA. She also knew that positive test results would be publicly disclosed following a proper hearing. *See*, *e.g.*, Finigan Decl. ex. B, ¶ 11. In addition, defendant signed forms stating that the information she provided during her urine sample submission was "not provided to USADA pursuant to a doctor/patient relationship" and was "not to be considered a confidential medical record." *See* Finigan Decl. ex. A. None of these factors were present in the case of *Comprehensive Drug Testing*,[1] and they demonstrate that defendant lacked an objectively reasonable expectation of privacy in her urine samples under the circumstances of the USADA process and protocols. *Smith*, 442 U.S. at 740. Accordingly, the Court DENIES defendant's motion to suppress evidence.

## 2.     Defendant's motion to dismiss the indictment

### A.     The perjury trap doctrine

Defendant argues the Court should dismiss her indictment because the prosecution violated her due process rights by misusing the investigatory powers of the grand jury in order to secure perjury charges against her. Although the Ninth Circuit has "not yet recognized a so-called perjury trap as a valid defense, [it has] noted cases from other jurisdictions holding that the government violates due process when it 'calls a witness before the grand jury with the primary purpose of obtaining testimony from him in order to prosecute him later for perjury.'" *United States v. McKenna*, 327 F.3d 830, 837 (9th Cir. 2003) (quoting *United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991)). The Ninth Circuit has recognized that a perjury trap might violate due process or be an abuse of grand jury proceedings

---

[1]For the same reason, defendant's reliance on *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), is misplaced. There, the Supreme Court held, under a special needs analysis, that a hospital could not provide the drug test results of pregnant women to law enforcement, but the women had not consented to drug testing, had not consented to the public disclosure of testing results, and had not been aware that their urine samples would become the property of the hospital.

4

1   when the prosecution uses its investigatory powers "to secure a perjury indictment on matters which are

2   neither material nor germane to a legitimate ongoing investigation of the grand jury." *Chen*, 933 F.2d

3   at 796-97. The perjury trap doctrine is inapplicable, however, "[w]hen testimony is elicited before a

4   grand jury that is attempting to obtain useful information in furtherance of its investigation, or

5   conducting a legitimate investigation into crimes which had in fact taken place in its jurisdiction."

6   *McKenna*, 327 F.3d at 837 (quoting *Chen*, 933 F.2d at 797).

7          Defendant argues that the taking of her grand jury testimony amounted to a perjury trap for two

8   reasons: 1) she claims her testimony was not material to a legitimate investigation into crimes occurring

9   within the grand jury's jurisdiction, *see Chen*, 933 F.2d at 796-97; and 2) she argues her testimony was

10  elicited through repetitious questioning whose purpose was to coax her into committing perjury, *see id.*

11  at 797 (citing *Bursey v. United States*, 466 F.2d 1059, 1080 n.10 (9th Cir. 1972)). Even assuming the

12  Ninth Circuit would recognize the perjury trap doctrine as a valid defense, the Court finds that, as a

13  matter of law, defendant's grand jury testimony was not immaterial because defendant "was a person

14  who likely would have knowledge of" BALCO and Arnold and their involvement with illegal

15  performance-enhancing substances. *Id.* Nor does the Court find that the purpose of defendant's

16  repetitious questioning was to coax defendant into committing perjury, as "[s]ome repetition in the

17  examination of a witness before a grand jury is inevitable and, under some circumstances, it may even

18  be desirable." *Bursey*, 466 F.2d at 1079; *see also id.* at 1079 n.9 ("A grand jury . . . has an appropriate

19  interest in hearing responses to questions about the same matter put in different ways to test the witness'

20  powers of recollection and credibility."); *Chen*, 933 F.2d at 795 n.1 (quoting the repetitious questioning

21  of defendant Chen before the grand jury). Accordingly, on this record, the Court DENIES defendant's

22  motion to dismiss the indictment for grand jury abuse. For the same reasons, the Court also DENIES

23  defendant's motion to dismiss the indictment because her false testimony was not material to the grand

24  jury's legitimate inquiry. The issue of materiality will be decided by the jury at trial.

25

26         **B.**       **Obstruction of justice count**

27         Defendant argues that Count IV of the indictment, charging defendant with obstruction of justice

28  in violation of 18 U.S.C. § 1503, should be dismissed because the immunity order prevents such a

5

1  charge. That immunity order states that defendant's "testimony and other information compelled from"

2  her "may not be used against her in any criminal case, except a prosecution for perjury, false declaration,

3  or otherwise failing to comply with this order." Balogh Decl. ex. M; *see also* 18 U.S.C. § 6002.

4  Defendant argues that a charge of obstruction of justice falls beyond the exceptions provided in the

5  immunity order because obstruction of justice is a different criminal violation from perjury and false

6  declaration, and does not fall into the category of crimes for "otherwise failing to comply with this

7  order." The Court DENIES defendant's motion to dismiss Count IV because "all courts which have

8  passed on the issue have decided that a prosecution for obstruction of justice is one for 'otherwise failing

9  to comply with the order' compelling testimony." *United States v. DeSalvo*, 797 F. Supp. 159, 165

10  (E.D. N.Y. 1992); *see also United States v. Black*, 776 F.2d 1321, 1327 (6th Cir. 1985); *United States*

11  *v. McGee*, 798 F. Supp. 53, 58-59 (D. Mass. 1992).

12  The Court also DENIES WITHOUT PREJUDICE defendant's motion to dismiss or strike this

13  charge based on constructive amendment because the motion is premature. If, after evidence has been

14  presented to the jury at trial, defendant continues to believe that Count IV has been constructively

15  amended, defendant may move for a limiting instruction at that time. *See United States v. O'Connor*,

16  737 F.2d 814, 822 (9th Cir. 1984) (limiting instructions may cure an improper amended of the

17  indictment).

18

19  **C.    Duplicity of Counts I and III**

20  Defendant also argues that Counts I and III of the indictment should be dismissed because they

21  charge multiple false declarations made by defendant, and are thus duplicitous. "An indictment is

22  duplicitous where a single count joins two or more distinct and separate offenses." *United States v.*

23  *Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other grounds by United States v.*

24  *Lopez*, 484 F.3d 1186 (9th Cir. 2007). "The vices of duplicity arise from breaches of the defendant's

25  Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count

26  could be obtained without a unanimous verdict as to each of the offenses contained in the count."

27  *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). The Court finds that Counts I and

28  III of the indictment are duplicitous because each count charges defendant with giving false testimony

6

in response to two distinct questions, either one of which could independently serve as the basis for a perjury conviction. The first count charges perjury based on defendant's testimony with regard to (1) "get[ting] any other services from Mr. Arnold or products," and (2) "get[ting] . . . banned or illegal performance-enhancing drugs from Mr. Arnold." Thus, a jury could find defendant guilty of either lying about receiving *services* from Mr. Arnold, lying about receiving performance-enhancing *drugs* from Mr. Arnold, or both. The third count presents similar problems, as a jury could find defendant guilty of lying about (1) *taking* anabolic steroids, (2) *receiving* anabolic steroids, or (3) both. Both counts, as currently written, would raise serious questions about the unanimity of the jury's verdict. Therefore, the prosecution shall elect the charge within each count on which it will rely at trial. *Ramirez-Martinez*, 273 F.3d at 915. In the alternative, because the indictment is short and each count contains very few questions, the prosecution may move for a limiting instruction that would cure the defects noted here. *See id.* ("'Defendant's remedy is to move to require the prosecution to elect . . . the charge within the count upon which it will rely. Additionally, a duplicitous . . . indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment.'") (quoting *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981)). While the Court agrees with defendant that Counts I and III are duplicitous, her motion to dismiss these counts is DENIED.

### 3.      Defendant's motion for discovery

#### A.      Identities of the grand jurors

Defendant argues the Court should compel the prosecution to produce the names, addresses, and telephone numbers of all members of the grand jury sitting during defendant's 2003 grand jury testimony, pursuant to the Sixth Amendment, fundamental fairness embodied in the Fifth Amendment, and Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

The Supreme Court consistently has recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979); *see also In re Special Grand Jury*, 674 F.2d 778, 781 (9th Cir. 1982) (noting the "long-standing rule of secrecy of the grand jury"). Rule 6(e)(3)(E)(ii) provides an exception to the secrecy of grand jury proceedings, allowing the courts to "authorize disclosure – at a time, in a

**United States District Court**
For the Northern District of California

1  manner, and subject to any other conditions that it directs – of a grand-jury matter . . . (ii) at the request

2  of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that

3  occurred before the grand jury." To justify disclosure under Rule 6(e), defendants "must show that the

4  material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need

5  for disclosure is greater than the need for continued secrecy, and that their request is structured to cover

6  only material so needed." *Douglas Oil*, 441 U.S. at 222.

7        Defendant fails to meet the *Douglas Oil* requirements here. Defendant cites no authority for her

8  argument that she should be allowed to access the names and contact information of all members of the

9  grand jury, and the Court does not believe that defendant has met her burden of showing that the need

10 for disclosure of this information is greater than the need for continued secrecy. The Court therefore

11 DENIES defendant's motion to discover the identities of the grand jury members.

12

13       **B.**      **Documents material to preparing a defense**

14       Defendant seeks a variety of documents that she claims are material to preparing her defense,

15 Fed. R. Crim. P. 16(a)(1)(E)(i), or are grand jury matters that may be disclosed pursuant to Rule

16 6(e)(3)(E). First, defendant seeks all grand jury subpoenas issued in relation to her indictment,

17 including all subpoenas that resulted in materials mentioning defendant, and all documents received in

18 response to these subpoenas. In order to access these grand jury documents, the defendant "must show

19 that the material [she] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that

20 the need for disclosure is greater than the need for continued secrecy, and that [her] request is structured

21 to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. The Court agrees with defendant that

22 some of this material may be relevant to defendant's argument that her testimony was not material to

23 the grand jury investigation. The Court therefore GRANTS this motion, but only as to documents

24 relating directly to defendant's indictment that were received in response to grand jury subpoenas. To

25 protect the identity of the grand jury witnesses, the Court orders the prosecution to redact the names of

26 any grand jury witnesses from the documents provided to defendant. In addition, the Court DENIES

27 defendant's motion to discover the identities of the grand jury witnesses, and also DENIES defendant's

28 request for  the subpoenas themselves. *See id.* ("Persons called upon to testify will consider the

8

1  likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution

2  or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury

3  in the performance of its duties.").

4      The Court also GRANTS defendant's motion to compel the prosecution to turn over evidence

5  recovered during the BALCO search that shows defendant's relationship with Patrick Arnold and

6  BALCO, but the Court DENIES defendant's motion to turn over all other documents relating to the

7  indictment of Arnold as overbroad and not necessary, particularly given the other materials that will be

8  disclosed to defendant.

9      Defendant also seeks administrative records of the district court in the prosecution's possession

10 showing when the BALCO grand jury was impaneled and when its term was extended. The Ninth

11 Circuit has held that such ministerial documents, even related to grand jury proceedings, should be

12 available to the public "[a]bsent specific and substantial reasons for a refusal." *In re Special Grand*

13 *Jury*, 674 F.2d at 781. The prosecution has not cited any specific and substantial reasons for

14 withholding such ministerial records from defendant, so the Court GRANTS defendant's motion with

15 regard to this request.

16     Finally, Defendant seeks information redacted from an affidavit executed pursuant to a warrant

17 in the Eastern District of New York. The information concerns the prosecution of Kirk Radomski. Even

18 assuming, for the purposes of argument, that the prosecution may have overreached in the Radomski

19 case, defendant's testimony still may have been relevant to the BALCO grand jury investigation. The

20 Court DENIES defendant's request.

21

22     **C.     Other miscellaneous discovery requests**

23     Defendant asks the Court to order the prosecution to turn over a variety of other materials. The

24 Court DENIES defendant's request for impeachment evidence relating to potential witnesses because

25 the prosecution has stated that it plans to comply with its obligations to provide exculpatory and

26 impeachment evidence when the time comes. Similarly, the Court DENIES defendant's request for a

27 preservation order because the prosecution asserts that it will disclose exculpatory and impeachment

28 evidence. The Court DENIES defendant's request for reports prepared by expert witnesses because the

9

1  prosecution has already disclosed all reports by the expert witnesses it intends to call, and asserts that

2  it will provide adequate notice for any additional expert witnesses. The Court DENIES defendant's

3  request for documents relating to the prosecution's receipt of defendant's medical records, as defendant

4  has provided no indication of why this information is material or relevant to defendant's case. The

5  Court also DENIES defendants' request for the identity of all informants or cooperating witnesses

6  involved in this case, because the proseuction does not intend to use any informants as witnesses.

7

8  **4.      Defendant's motion to preclude AUSA Nedrow from serving as trial counsel**

9       Finally, defendant moves to preclude Assistant United States Attorney Jeffrey Nedrow from

10  serving as trial counsel during defendant's trial because Nedrow was the attorney who questioned

11  defendant in front of the grand jury. Defendant relies on the advocate-witness rule and the rule against

12  vouching by the prosecution. The parties agree that this motion is premature, and the Court DENIES

13  the motion without prejudice.

14

15                                      **CONCLUSION**

16       For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's

17  motion to suppress evidence [Docket No. 46], DENIES defendant's motion to dismiss the indictment

18  [Docket No. 44], DENIES IN PART and GRANTS IN PART defendant's motion for discovery [Docket

19  No. 49], and DENIES WITHOUT PREJUDICE defendant's motion to preclude Nedrow from serving

20  as trial counsel [Docket No. 48].

21

22       **IT IS SO ORDERED.**

23

24  Dated: March 3, 2008

                                      SUSAN ILLSTON
25                                     United States District Judge

26

27

28

10