IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | No. CR 06-00803 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL** |
| v. | |
| TAMMY A. THOMAS, | |
| Defendant. | |

On March 20, 2009, the Court heard oral argument on defendant's motion for a new trial. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motion is DENIED.

**BACKGROUND**

**1.    Disclosure of Treasury Inspector General for Tax Administration Report**

On April 4, 2008, defendant Tammy A. Thomas was convicted by a jury of three counts of false statement to a grand jury, in violation of 18 U.S.C. § 1623(a), and one count of obstruction of justice, in violation of 18 U.S.C. § 1503. Defendant filed motions for judgment of acquittal and a new trial, which the Court denied on October 10, 2008. Defendant's appeal is currently pending before the Ninth Circuit.

Defendant was convicted of making false statements to a grand jury that was investigating the distribution of anabolic steroids and other performance-enhancing drugs by the Burlingame-based Bay Area Laboratory Co-operative ("BALCO"). Jeff Novitzky, a former special agent with the IRS who was integral to the government's investigation of BALCO, was a lead witness for the government. He

testified, among other matters, that defendant's false statements were "material" to the grand jury's investigation, as required for a conviction under § 1623(a).

In the course of the BALCO investigation, Novitzky and other agents executed a search warrant, on September 3, 2003, on the residence of Greg Anderson, a trainer affiliated with BALCO. The agents seized U.S. currency during the search and recorded that it amounted to $63,920. A bank teller later recounted the bills and found that the proper sum was $63,320. The $600 discrepancy prompted the Treasury Inspector General for Tax Administration ("TIGTA") to conduct an investigation. TIGTA investigated the incident between April 12, 2004 and October 15, 2004. It issued a 145-page report that consisted of a five-page summary and 22 exhibits.

The TIGTA report came to the Court's attention when the government began prosecuting cases arising from the BALCO investigation. The first case, *United States v. Conte*, CR No. 04-44, was against Victor Conte, James Valente, Greg Anderson, and Remi Korchemny. On May 18, 2005, the government made an *ex parte*, *in camera* submission to the Court concerning the TIGTA report. The government sought a court order that it was not required to disclose the TIGTA report and other documents associated with TIGTA's investigation to the *Conte* defendants. *See United States' Ex Parte In Camera Submission* (May 11, 2005). The Court ruled that the government must provide the materials to defense counsel.

On March 4, 2008, the government made another *ex parte*, *in camera* submission to the Court concerning the TIGTA report, this time in defendant's case. The government once again sought an order that it was not required to turn over "the investigative reports and other documents associated with TIGTA's internal review of the loss of the $600 in assets seized from Greg Anderson's residence." *See* Gov't Opp., at Docket 202-2 (United States' *Ex Parte In Camera* Submission (Mar. 4, 2008)) at 6. The Court ordered as follows:

> [A]bsent further order of the Court this material shall not be discussed at trial, but . . . the prosecution must disclose it, under seal, to defendant's attorneys. Defendant's attorneys are ordered not to share this information with defendant or with anyone else, unless and until the Court orders otherwise. If defendant's attorneys wish to file any papers relating to this material, they must do so under seal.

Decl. of Ethan A. Balogh in Supp. of Emerg. Mot. ("Balogh Decl."), ex. A (Mar. 6, 2008 Order Re: Disclosure of Material). The government responded to the Court's order by providing its March 4 brief

United States District Court
For the Northern District of California

and the five-page summary of the TIGTA report. *See id.*, ex. B.

On February 12, 2009, defense counsel filed an *ex parte* motion seeking the Court's leave to disclose to his client the 22 exhibits in the TIGTA report, which counsel had obtained for the first time on February 6, 2009. *See* Def. Emergency Mot. [Docket No. 189] The Court granted defense counsel leave to disclose this information and ordered the government to provide a complete, unredacted version of the attachments to the TIGTA report. *See* Order Re: Disclosure. [Docket No. 192]

**2.     Undisclosed TIGTA Exhibits**

Of particular interest to defendant are previously undisclosed exhibits in the TIGTA report that concern not the missing $600 from the search of the Anderson residence but allegations that Novitzky (1) pursued a book deal about his involvement in the BALCO investigation and (2) disclosed the names of individuals who were targets of the investigation.

The first item is Exhibit 22, which is a memorandum by Special Agents Matthew Lampo and William Marandola. It consists of a two-paragraph summary of an interview with IRS special agent Mark Lessler. The interview was conducted after John Littman, a reporter for *Playboy* Magazine, left Lessler a voice mail message on February 17, 2004. The agents summarize their interview with Lessler as follows:

> Lessler contacted TIGTA concerning a voice mail received from Playboy magazine reporter John Littman. Littman requested verification of statements made by . . . Novitzky concerning the on going . . . BALCO investigation. Lessler provided the voice mail message received from Littman, a transcript of which is attached.
> In part of the message, Littman alleges that in 2003 . . . Novitzky[,] while in front of the San Jose, CA Federal building with [former undercover agent Iran] White, Assistant United States Attorney Jeff Nedrow and others[,] . . . Novitzky named Barry Bonds, Jason Giambi and other major league baseball players as targets of the on going BALCO investigation.

*See* Balogh Decl., ex. F at 144. The transcript of Littman's voice mail message is attached to the memorandum. It reflects that Littman also asked Lessler whether Novitzky sought to write a book about the BALCO investigation:

> In 2003 at a meeting after Agent White was undercover at the Bay Area Fitness gym White overheard Agent Novitzky talking about his plan to write a book about the steroid investigation.
> Is Agent Novitzky planning to write or to participate in a book or film about the BALCO steroid investigation?

3

*Id.* at 145.

The second item is Exhibit 21, which is a memorandum of Special Agent Julie Parodi's interview with Jeff Nedrow, an Assistant United States Attorney who prosecuted the BALCO cases, including the case against defendant. Parodi interviewed Nedrow to follow up on Littman's voice mail. *See* Balogh Decl., ex. F at 142. Parodi describes Nedrow's statements during the interview as follows:

> [Nedrow] stated that in April of 2003, during a strategy meeting involving Special Agent Novitzky [and other law enforcement officials] at [Nedrow's] office, a plan was made to introduce an undercover agent into the Bal Co investigation to further the investigation. Also discussed at this meeting was the fact that they had several individuals associated to the case and that they were not sure to what extent Barry Bonds and others may have been involved in the illegal use and distribution of steroids.

*See id.*

The last item is Exhibit 13, which is the memorandum written by Special Agents Parodi and Lampo after they interviewed Novitzky on June 10, 2004. Their memorandum states, in relevant part:

> [Novitzky] denied all allegations relating to him initiating the investigations for personal reasons or that he targeted Barry Bonds for personal reasons. He denied ever attempting to obtain a "book deal" for his role in the investigation and opined that the "book deal" could have been a misconstrued comment that was made as a joke and overheard incorrectly by others.

*Id.* at 79-80.

Now before the Court is defendant's motion for a new trial or dismissal of this case with prejudice.

## DISCUSSION

**1.  Defendant's Motion for a New Trial**

Defendant argues that she is entitled to a new trial because the government violated its obligation to disclose exculpatory evidence in its possession and obtained defendant's conviction using perjured testimony.

### A.  The TIGTA exhibits cited by defendant are not *Brady* material

Defendant contends that the exhibits in the TIGTA report constitute *Brady* material. Due process requires that a prosecutor reveal exculpatory evidence when it is material to the defense. *Brady*

4

*v. Maryland*, 373 U.S. 83, 86 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion); *accord id.* at 685 (White, J., concurring). Materiality is measured in terms of the suppressed evidence considered as a whole, rather than item by item. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995). To establish a *Brady* violation, a defendant must demonstrate that the evidence was favorable as exculpatory or impeachment evidence, that the prosecution willfully or inadvertently suppressed the evidence, and that the non-disclosure prejudiced the defendant. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

According to defendant, the previously undisclosed exhibits of the TIGTA report are impeachment evidence. Specifically, she argues that Exhibit 22 (the interview with Mark Lessler after he received a voice mail from *Playboy* reporter John Littman and the transcript of Littman's voice mail) is evidence that in 2003, Novitzky said he was targeting athletes in the BALCO investigation. She also argues that Exhibit 21 (the Nedrow interview) is evidence that in early 2003, Novitzky and other agents were "focused" on athletes. *See* Def. Mot. at 14. Defendant claims that she could have used these statements at trial to impeach Novitzky's trial testimony that the BALCO investigation did not target athletes. *See United States v. Young*, 86 F.3d 944, 949 (9th Cir. 1996) (under Federal Rule of Evidence 613(b), witness may be impeached with a prior inconsistent statement). In addition, defendant contends that Exhibit 13 is evidence that Novitzky "filed a contradictory (and false) declaration to this Court to cover up evidence that impeached his motives." *See* Def. Mot. at 14. According to defendant, she could have used this evidence both to impeach Novitzky's character for truthfulness and to show that he was biased (i.e. that his book deal gave him an ulterior motive for pursuing high profile athletes).

The Court disagrees with defendant's characterization of Exhibits 21 and 13 as impeachment evidence. Exhibit 21 is not evidence that Novitzky and other agents "focused" on athletes in the BALCO investigation, as defendant claims. The precise language in Parodi's memorandum is that Nedrow told her, "Also discussed at this meeting was . . . the fact that [Novitzky and other agents] had

several individuals associated to the case and they were not sure to what extent Barry Bonds and others may have been involved in the illegal use and distribution of steroids." Balogh Decl., ex F at 142. At most, this statement is evidence that in April of 2003, investigators discussed the possibility that athletes may have "been involved" in steroid use and distribution; it does not demonstrate that the BALCO investigation ever targeted athletes. The statement attributed to Novitzky by Nedrow therefore does not contradict Novitzky's trial testimony and is not impeachment evidence.

Defendant claims that Exhibit 13 proves that Novitzky filed a false declaration with this Court on October 29, 2004. The Court disagrees. Novitzky filed the October 29 declaration in the *Conte* case in support of the government's opposition to a defense motion to dismiss the indictment. He attested, in relevant part:

> I have reviewed the April 2004 Playboy article in which Iran White spoke to a reporter, without authorization, about his role in the Balco investigation. The article grossly overstates Agent White's role in this investigation, and contains numerous inaccuracies and outright falsehoods. Among them are: . . .
> . . .
> c. The article falsely stated that Agent White overheard me discussing getting a "book deal" in connection with my involvement in this case. This is untrue; I have never had such a discussion with anyone, and have never had any involvement with a "book deal" in connection with this case or any other.

Def. Mot., ex 1 ¶ 12. According to defendant, Novitzky's statements in the October 29 declaration and Exhibit 13 (which records his June 2004 interview with TIGTA) are in conflict because in the declaration, he denied ever discussing a book deal, while in Exhibit 13, he denied to TIGTA investigators that he had attempted to obtain a book deal and suggested that the book deal statement "could have been a misconstrued comment that was made as a joke and overheard incorrectly by others." Balogh Decl., ex. F at 80. The conflict between these two statements is not evident to the Court. In both, he denies pursuing a book deal. The fact that he suggested to TIGTA investigators that the book deal rumor may have originated from an overheard and misunderstood joke does not constitute an admission that he in fact sought a book deal. The Court finds that the statement in Exhibit 13 is not evidence of bias (as Novitzky did not admit to seeking a book deal) and does not contradict his October 29 declaration. Exhibit 13 therefore is not impeachment evidence.

The remaining evidence is Exhibit 22, which includes the tape recording of *Playboy* reporter John Littman's allegation that Novitzky said he was targeting athletes. (To be clear, Littman said in the

6

voice mail that Special Agent Iran White said that Novitzky said that Barry Bonds, Jason Giambi and other Major League baseball players were targets of the BALCO investigation.) The Court finds that Littman's allegation does not constitute *Brady* material because there is not a "reasonable probability" that there would have been a different result at trial had this evidence been disclosed. *Bagley*, 473 U.S. at 682. First, it is not evident that this evidence would have been admissible at trial. Defendant does not offer a hearsay exception that would have allowed for the admission of Novitzky's statement, which was embedded in multiple layers of hearsay. If offered as non-hearsay to impeach Novitzky's trial testimony that the BALCO investigation did not target athletes, this Court most likely would have used its "broad discretion" to exclude extrinsic evidence to rebut a witness's direct testimony. *See United States v. Higa*, 55 F.3d 448, 452 (9th Cir. 1995) (citation omitted). Second, Littman's allegation has little value as impeachment evidence. It is highly doubtful that if the jury had heard that a reporter from *Playboy* called the IRS alleging that Novitzky told a third party that Novitzky was targeting athletes, jurors would have questioned Novitzky's credibility, let alone rejected his testimony on the materiality of defendant's false statements. Third, the five-page summary that the government disclosed to defendant included the following statement:

> Playboy Magazine reporter, John Littman claimed that Novitzky named specific individuals as targets of [the] investigation in public and that Novitzky was writing a book or movie about his investigation. Novitzky denied making any public disclosures of information to the news media or other sources and denied having any type of book deal relating to his investigation.

*See* Balogh Decl., ex. B. This summary referenced exhibits 22 and 15. Had defense counsel thought that Littman's allegations, which mirrored the content of the *Playboy* article,[1] were material to his defense, he could have requested the referenced exhibits or sought an interview with Littman, with the Court's permission if necessary.

In sum, the Court finds that the sections of the TIGTA report cited by defendant are not *Brady* material. Nedrow's interview could not have been used to impeach Novitzky because the statement attributed to Novitzky by Nedrow did not contradict Novitzky's trial testimony. Novitzky's statement

---

[1] *See* Gov't Opp., ex. 2, "Gunning for the Big Guy: The Exclusive Inside Story of the Balco Steroids Investigation and the Government's Attempt to Bring Down Barry Bonds," Special Report, *Playboy Magazine*, March, 2004.

7

to the TIGTA investigators was not proof of bias because he did not admit to pursuing a book deal. For the same reason, his statement in the TIGTA report does not prove that he filed a false declaration with this Court in October of 2004. Littman's allegations on the voice mail most likely would have been inadmissible at trial and have little probative value on the issue of Novitzky's credibility.

### B. The TIGTA report does not establish that the government obtained defendant's conviction using perjured testimony

Defendant argues that she is entitled to a new trial because the government used perjured testimony to obtain her conviction. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (government cannot obtain a conviction through false evidence). According to defendant, Novitzky committed perjury when he denied that his investigation was targeting athletes. As discussed above, the TIGTA report does not establish that Novitzky was targeting athletes in the BALCO investigation. Thus, defendant has failed to show that Novitzky's trial testimony was perjured. Her argument that she is entitled to a new trial because of Novitzky's purportedly perjured testimony therefore fails.

### 2. Defendant's Motion for Dismissal of the Indictment with Prejudice

Defendant contends that flagrant *Brady* violations by the government warrant dismissal of her indictment with prejudice. *See United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) ("district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation"). The Court's foregoing conclusion that the government did not commit *Brady* violations precludes defendant's argument that she is entitled to dismissal of her case with prejudice.

At oral argument, defense counsel requested a specific finding on the issue of what the Court intended when it ordered the government on March 6, 2008 to disclose "this material" to the defense. The Court's intention was for the government to disclose the material it had submitted in conjunction with its March 4 *ex parte* filing: the government's brief and the five-page summary of the TIGTA report. The Court had expected that, if defense counsel sought the exhibits that were referenced in the summary,

he would request them.  The Court finds no evidence of misconduct in the government's disclosure of the five-page summary, rather than the complete TIGTA report, to defendant in March of 2008.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion.

**IT IS SO ORDERED.**

Dated: April 6, 2009

SUSAN ILLSTON
United States District Judge